UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

OYEBOLA J. BAMMEKE,

                    Plaintiff,

        - against -

GEICO INDEMNITY COMPANY,

                    Defendant.

————————————————————————

25-cv-9547 (JGK)

**Memorandum
Opinion Order**

**John G. Koeltl, District Judge:**

The plaintiff, Oyebola Bammeke ("Bammeke"), alleges that he was arrested and required to pay higher automobile insurance premiums because the defendant, GEICO Indemnity Co. ("GEICO"), inaccurately reported Bammeke's insured status to the New York Department of Motor Vehicles (the "DMV"). Bammeke brings several New York state-law tort and contract claims against GEICO. GEICO now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all but one of those claims for failure to state a claim. For the following reasons, GEICO's motion is **granted**.

## I.

Unless otherwise noted, the following facts are taken from the plaintiff's amended complaint ("Am. Compl.") and supporting documents, ECF No. 15, and are accepted as true for purposes of the motion to dismiss.

### A.

Bammeke is a citizen of the United Kingdom who lives in the United States pursuant to a work visa. Am. Compl. ¶ 9. Bammeke purchased an

automobile insurance policy from GEICO, which covered his vehicle between June 2023 and December 3, 2025. Am. Compl. ¶¶ 16, 61. Bammeke paid the premiums due under the policy. Id. ¶ 17.

Under New York law, automobile insurers are required to transmit proof of insurance to the DMV on behalf of insureds in a timely fashion. Id. ¶ 19. The DMV relies on these filings by insurers to determine whether a vehicle is properly insured, as required by New York law. Id. The DMV, in turn, transmits insurance status information to law-enforcement databases used by the New York City Police Department ("NYPD") during traffic stops. Id. ¶ 20. In March 2024, GEICO failed to provide the DMV accurate proof of insurance on Bammeke's behalf. Id. ¶ 21.

On December 20, 2024, Bammeke was driving from Brooklyn to Central Valley to complete holiday shopping. Id. ¶ 24. While driving back to Brooklyn through Manhattan, Bammeke was stopped at a routine NYPD traffic checkpoint. Id. ¶ 26. After waiting approximately twenty minutes, an NYPD officer informed Bammeke that his license and registration were suspended and that he was under arrest. Id. ¶¶ 28–29. Bammeke was handcuffed and brought to the 19th Precinct, where he was placed in a holding cell for approximately five hours. Id. ¶¶ 31–33. Bammeke's vehicle was towed and later transferred to an impound lot in Brooklyn. Id. ¶ 45. When he was released, Bammeke received a Desk Appearance Ticket requiring him to appear in court on January 6, 2025. Id. ¶ 35.

The next day, Bammeke contacted GEICO to report his arrest. Id. ¶ 36. During the call, a GEICO representative informed Bammeke that GEICO's Service Department had failed to instruct its Underwriting Department to transmit proof of continuous coverage to the DMV, causing the DMV to suspend his license and registration. Id. ¶¶ 37–38.

On December 26, 2024, GEICO sent Bammeke a letter admitting fault and acknowledging its failure to transmit Bammeke's proof of insurance to the DMV. Id. ¶ 40. In that same letter, GEICO represented that it had since "sent the correct filing and NYS-DMV ha[d] expunged the suspension from" Bammeke's vehicle. Am. Compl., Ex. C, ECF No. 15-3. GEICO also represented that it would reimburse Bammeke for the "arrest-related costs." Am. Compl. ¶ 58.

Despite its admission of fault in the December 26, 2024 letter, GEICO recorded Bammeke's arrest and the towing and impoundment of his vehicle as a "fault-related incident." Id. ¶ 67. When Bammeke sought to renew his policy, GEICO provided him with a quote that was significantly higher than his earlier premiums. Id. ¶ 62. Bammeke sought coverage from another insurer, Progressive Insurance ("Progressive"), but Progressive also provided him with a quote significantly higher than what he had previously paid. Id. ¶ 66. Progressive subsequently provided Bammeke with a driving and claims-history report, which identified Bammeke's December 20, 2024 arrest as a fault-related incident. Id. ¶ 67; see also Am. Compl., Ex. D, ECF No. 15-4.

Bammeke alleges that GEICO's actions have diminished his insurability and interfered with his ability to find competitively priced automobile

insurance. Am. Compl. ¶ 69. He also fears that his arrest may negatively affect his immigration status and employment prospects. Id. ¶¶ 74–76.

### B.

Bammeke sued GEICO in the Supreme Court of the State of New York, New York County, on October 8, 2025. See ECF No. 1-1. On November 14, 2025, GEICO removed the action to this Court. ECF No. 1. Bammeke filed an amended complaint on January 27, 2026, alleging New York state-law claims for negligence (Count I), Am. Compl. ¶¶ 78–84, negligent misrepresentation (Count II), id. ¶¶ 85–93, false imprisonment (Count III), id. ¶¶ 94–104, breach of contract (Count IV), id. ¶¶ 105–12, and tortious interference with prospective business advantage (Count V), id. ¶¶ 113–25. GEICO now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts II through V for failure to state a claim.

### II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

For purposes of a 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "[A] document not expressly incorporated by reference in the complaint" that "is nevertheless integral to the complaint" is "a fair object of consideration on a motion to dismiss." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." Id. "In most instances" in which the incorporation-by-reference "exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." Id.

### III.

Bammeke brings five claims against GEICO: one for negligence (Count I), one for negligent misrepresentation (Count II), one for false imprisonment (Count III), one for breach of contract (Count IV), and one for tortious interference with a prospective business relationship (Count V). GEICO moves to dismiss Counts II through V, but not Count I.

## A.

Bammeke's second claim is for negligent misrepresentation. He alleges that GEICO owed him a duty to provide accurate information regarding his insurance coverage and breached that duty by representing that his policy was active and properly transmitted to the DMV. Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am., 51 F. Supp. 3d 379, 397–98 (S.D.N.Y. Sep. 30, 2014).

Bammeke's negligent-misrepresentation claim fails at the outset because it is duplicative of his negligence claim. The negligence claim asserts that GEICO breached its duty to exercise reasonable care in administering Bammeke's insurance policy and maintaining his insurance records by, among other things, inaccurately reporting Bammeke's insurance status to the DMV and failing to notify him of that error. Am. Compl. ¶ 81. The negligent-misrepresentation claim rests on that same conduct—the only difference is that Bammeke places the focus on GEICO's alleged failure to inform him adequately that his policy was being negligently administered. Id. ¶ 88; compare id. ¶¶ 79–84, with id. ¶¶ 87–88, 91–92. "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief." Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., 156 F. Supp. 3d

348, 362 (E.D.N.Y. 2016); <u>Paladini v. Capossela, Cohen, LLC</u>, No. 11-cv-2252, 2012 WL 3834655, at *6 (S.D.N.Y. Aug. 15, 2012) (dismissing claims as duplicative where claims including negligence and negligent misrepresentation were based upon the same allegations and injuries), <u>aff'd</u>, 515 F. App'x 63 (2d Cir. 2013).

Bammeke also independently fails to state a negligent-misrepresentation claim because he does not allege the existence of a special or privity-like relationship. "[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes [the plaintiff] a fiduciary duty." <u>Turner v. Temptu Inc.</u>, No. 11-cv-4144, 2013 WL 4083234, at *8 (S.D.N.Y. Aug. 13, 2013). "Courts applying New York law do not ordinarily find arms-length commercial transactions to involve fiduciary relationships, unless one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." <u>Paraco</u>, 51 F. Supp. 3d at 398. Courts have thus generally held that "[n]o special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer." <u>Batas v. Prudential Ins.</u>, 724 N.Y.S.2d 3, 7 (App. Div. 2001); <u>see also</u> <u>Jane St. Holding, LLC v. Aspen Am. Ins.</u>, No. 13-cv-2291, 2014 WL 28600, at *9 (S.D.N.Y. Jan. 2, 2014) (same).

Bammeke responds by arguing that his relationship with GEICO was not an ordinary arm's-length transaction, but instead one that required him to repose special trust and confidence in GEICO by virtue of its "exclusive, unilateral control over a regulatory reporting system." Mem. Opp'n Mot. Dismiss

("Opp'n") 9, ECF No. 24. Indeed, "under the right circumstances, the relation-ship between insurer and insured may be imbued with elements of trust and confidence which render the relationship more than a mere arm's length asso-ciation." Jane St. Holding, 2014 WL 28600, at *9. But "allegations that one party has superior knowledge about a product or service, by itself, will not suf-fice to establish a fiduciary relationship." Paraco, 51 F. Supp. 3d at 398 (citing RNK Cap. LLC v. Natsource LLC, 907 N.Y.S.2d 476, 478 (App. Div. 2010)). "Instead, to establish a fiduciary duty, an insured must plead some extraordi-nary circumstance, such as efforts by the insurer to gain the insured's trust or confidence." Id. And while Bammeke's opposition brief emphasizes GEICO's allegedly exclusive control over the information that should have been trans-mitted to the DMV, his complaint lacks any allegations supporting that contention.

Because Bammeke's negligent-misrepresentation claim duplicates his negligence claim and because he has not adequately pleaded that he and GEICO shared a special or privity-like relationship, his claim for negligent misrepresentation (Count II) is **dismissed without prejudice.**

**B.**

Bammeke next alleges that GEICO is liable for false imprisonment be-cause the DMV's erroneous suspension of his license and registration caused NYPD to arrest and detain him for approximately five hours. "Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended

to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and[,] (4) the confinement was not otherwise privileged." <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995). "To prove intent, a plaintiff must show that the defendant either: (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." <u>King v. Crossland Sav. Bank</u>, 111 F.3d 251, 255 (2d Cir. 1997).

GEICO contends that Bammeke has failed to plead a false-imprisonment claim because he alleges no facts showing that GEICO either intended to confine Bammeke or instigated his arrest. Bammeke responds by arguing that "[c]ourts recognize that a defendant who provides information to a system designed to trigger enforcement action, with knowledge of the consequences of inaccurate reporting, may be held to have instigated the resulting confinement." Opp'n 12. The Court of Appeals for the Second Circuit, however, expressly rejected this argument in <u>King</u>. In that case, the plaintiffs presented to a bank nine American Express Travelers Cheques made out to third parties. <u>King</u>, 111 F.3d at 253. The bank called American Express, which erroneously reported the checks as lost or stolen. The bank called NYPD, and officers arrested the plaintiffs. <u>Id.</u> at 353–54. The district court dismissed the plaintiffs' false-imprisonment claim against American Express, and the Court of Appeals affirmed. "Regardless of what duty American Express owed [the plaintiffs], and regardless of whether or not this duty was breached via negligence, or even recklessness, [the plaintiffs] put forth no evidence that American Express

either provided information directly to the NYPD or <u>intended</u> that [the plaintiffs] be confined by the NYPD." <u>Id.</u> at 257. "When police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment—even if the information provided is later found to be erroneous." <u>Id.</u>

Bammeke argues that <u>King</u> is distinguishable for three reasons. First, Bammeke notes that in <u>King</u>, American Express made a single one-time error, whereas in this case, GEICO failed to satisfy a "continuous, statutory obligation to maintain accurate records." Opp'n 11. It is not clear, however, why that distinction matters or how it bears on whether GEICO intended for Bammeke to be detained.

Second, Bammeke argues that in <u>King</u>, American Express had no reason to anticipate that its erroneous response would result in arrest, whereas GEICO had such notice because it had previously entered into a consent order with the state of New York regarding GEICO's duty to report insurance status to the DMV. As an initial matter, Bammeke alleges nothing about the purported consent order in the amended complaint. Federal courts may "take judicial notice of the fact that … regulatory filings contained certain information." <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis omitted). "The Court may not, however, rely upon [regulatory consent orders] for the truth of the matters asserted without converting the motion into a motion for summary judgment." <u>Campanelli v. Flagstar Bancorp, Inc.</u>, No. 19-cv-7299, 2020 WL 5350245, at *7 (S.D.N.Y. Sep. 4, 2020).

10

Bammeke's argument fails in any event, however, because recklessly causing Bammeke's imprisonment still would not rise to the level of intent necessary to state a false-imprisonment claim. King was clear that under New York law, "even recklessness" does not establish intent for purposes of a false-imprisonment claim. 111 F.3d at 257.

Third, Bammeke argues that "in King, the police exercised independent judgment in deciding to arrest" the plaintiffs, whereas in this case, "the arrest was automatic and ministerial." Opp'n 12. But Bammeke alleges no facts supporting his claim that his arrest was "automatic." Nor is it obvious why an officer confronted with someone possessing an apparently stolen Travelers Cheque would have more discretion in deciding whether to arrest that person than an officer confronted with someone who has a suspended license.

Finally, Bammeke argues that whether GEICO had the requisite intent presents a factual question that cannot be resolved on a motion to dismiss. That is true only if he pleads adequate factual allegations that GEICO intended to have Bammeke detained. But he has not. Bammeke's false-imprisonment claim (Count III) is therefore **dismissed without prejudice.**

## C.

Bammeke's fourth claim is for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement, (2) performance by the plaintiff, (3) breach by the defendant,

and (4) damages. Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), aff'd, 759 F. App'x 42 (2d Cir. 2019) (summary order).

According to Bammeke, he entered into a contract with GEICO—his insurance policy—and performed by paying premiums. GEICO then allegedly breached the policy by failing to maintain accurate proof of insurance filings with the DMV, failing to notify Bammeke of his suspension, and improperly recording his arrest and vehicle-impoundment as at-fault incidents. Am. Compl. ¶¶ 106–09.

This claim fails because Bammeke never points to any specific provision of the policy that GEICO breached. When pleading the elements of a breach-of-contract claim, "a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002). "A breach of contract claim will be dismissed ... as being too vague and indefinite, where the plaintiff fails to allege ... the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." Negrete, 187 F. Supp. 3d at 468.

Bammeke resists this conclusion by insisting, without citing to any case law, that "federal notice pleading does not require the plaintiff to quote the precise contractual provision at the motion to dismiss stage." Opp'n 13. But Bammeke is mistaken—he must allege facts sufficient to show a plausible entitlement to relief on his claim, and he cannot show such entitlement without alleging that GEICO breached some duty flowing from a provision of the policy.

Bammeke argues in the alternative that the "fundamental purpose" of an insurance contract is to "provide the insured with valid insurance coverage that permits the lawful operation of a motor vehicle," and that GEICO breached the implied covenant of good faith and fair dealing by failing to make the regulatory filings necessary to promote that "fundamental purpose." Opp'n 13–14. This argument fails, however, because "a cause of action for breach of an implied warranty of good faith and fair dealing requires the pleading of <u>intent</u> by the breaching party to deprive the injured party of his rights under the contract." <u>Mancini v. UBS AG, N.Y. Branch</u>, 757 F. Supp. 3d 571, 578–79 (S.D.N.Y. 2024). "[C]onclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required." <u>Id.</u> Bammeke alleges no such facts. His claim for breach of contract is therefore **dismissed without prejudice.**

### D.

Finally, Bammeke alleges that GEICO tortiously interfered with his prospective business advantage by inaccurately reporting his arrest and vehicle-impoundment as an at-fault incident. This error allegedly impaired Bammeke's ability to obtain competitively priced insurance coverage with other insurers, like Progressive.

"Under New York law, the elements of a claim for tortious interference with prospective business advantage are: (1) a business relationship between the plaintiff and a third party; (2) defendant's knowledge of that relationship

and intentional interference with it; (3) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the relationship." Hutton v. Priddy's Auction Galleries, Inc., 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003). Bammeke's claim fails at the second and third steps.

First, Bammeke fails to allege facts showing that GEICO had knowledge of his prospective business relationship with Progressive. Bammeke contends that "because automobile insurance is mandatory for motorists operating vehicles in New York, the ability to obtain competitively priced coverage constitutes a recurring and foreseeable economic relationship," and thus "GEICO was aware that misclassification of incidents within the insurance databases would affect [Bammeke's] ability to obtain coverage from any insurer, not just Progressive." Opp'n 15–16. But foreseeability that some conduct could affect a person's relationship with other third parties is not the same as "knowledge of" a specific relationship and "intentional interference with it." Hutton, 275 F. Supp. 2d at 433.

Second, Bammeke fails to allege facts showing that GEICO either acted with the sole purpose of harming him or used dishonest, unfair, or improper means. "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that … the defendant acted solely out of malice, or used dishonest, unfair, or improper means." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006). As for malice, Bammeke claims in his opposition brief that GEICO "knowingly classified an

incident caused by its own admitted error as a fault-related event attributable" to him. Opp'n 17. Bammeke pleads no facts, however, showing that GEICO knowingly classified his arrest as a fault-related event.

Nor does Bammeke allege wrongful means. For purposes of a claim for tortious interference with prospective economic advantage, wrongful means "include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Connolly v. Wood-Smith, No. 11-cv-8801, 2014 WL 1257909, at *4 (S.D.N.Y. 2014). "The wrongful means requirement makes alleging and proving a tortious interference claim with business relations 'more demanding' than a tortious interference with contract claim." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008) (Sotomayor, J.). Bammeke alleges nothing amounting to wrongful means by GEICO.

Because Bammeke failed to allege that GEICO knowingly interfered with Bammeke's prospective business relationship with Progressive or that GEICO acted maliciously or through improper means, his claim for tortious interference with prospective business advantage is **dismissed without prejudice.**

## CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit.

15

For the foregoing reasons, GEICO's motion to dismiss is **granted**. Counts II through V are **dismissed without prejudice**.

The Clerk is respectfully directed to close ECF No. 19.

**SO ORDERED.**

Dated:     New York, New York
           May 19, 2026

                                        John G. Koeltl
                              **United States District Judge**